### LINCOLN v. LINDE et al.

*(Superior Court of New York City, Jury Term.   June, 1891.)*

PLEDGE—DISCHARGE OF LIEN.

A warehouseman, to whom goods have been pledged as security for advances made thereon, is not divested of his lien by taking a money judgment against the owner for the advances, and levying on and selling the goods; and hence neither the owner nor his assignee is entitled to any part of the proceeds of the sale where they are less than the advances.

Lowell Lincoln, assignee of John F. Plummer & Co., sued Frederick C. Linde, Frederick W. Conklin, and Colson C. Hamilton, for converting plaintiff's goods. Defendants answered, denying the conversion, and alleging that the goods had been pledged to them as warehousemen for advances for storage, insurance, etc., and that the alleged conversion consisted in their suing plaintiff's assignor for such advances, and in attaching and selling the goods in such action.

*Hornblower, Bryne & Taylor*, for plaintiff.   *E. S. Clinch*, for defendants.

McADAM, J.   Without going into the history of the transactions, about which there is no dispute, the following conclusions are controlling: All the goods were pledged with the defendants as warehousemen, as security for their advances by way of loans, for insurance against fire, for labor charges, and for storage. The amount due, $10,768.25, extended to all the goods that remained in defendants' possession. *Stallman* v. *Kimberly*, 121 N. Y. 393, 24 N. E. Rep. 939; *Schmidt* v. *Blood*, 9 Wend. 268. The plaintiff's contention is that, although the defendants may have had a lien upon the goods superior to the title under which the plaintiff claims, they waived that lien by taking a money judgment against the then owners of the goods, levying upon and selling them. A stranger buying in the property at the sale would, on the theory of estoppel, take title free from the lien, unless, perhaps, the property was sold subject to it, and the lienors retained possession in preservation of their right. But in an action by the general against the special owner of the property, to recover its value, the rule is that the plaintiff may recover such value, less the special property of the pledgee therein; and, if the special property exceeds the entire value, the general owner has suffered no loss, and has no cause of action, for he has not been damnified. The main purpose of the suit which resulted in the money judgment was to liquidate and establish the amount of the defendants' debt for which they had a lien. It accomplished, for practical purposes, nothing else. The terms of the pledge gave the defendants power to sell the property at public or private sale, and without notice to the pledgeors. Whether the sale was made by the defendants under the power to make one, or the sheriff's auctioneer under their discretion, is matter of form, rather than of substance, for, if a sale in either form was valid, the defendants are protected. The lien amounted to $10,768.25, and the goods realized $1,608.43, which is the stipulated value of the goods for the purposes of this action. The plaintiff claims that at the time of the judgment and sale the property belonged to him as assignee, subject to the lien aforesaid, and that the sale divested the lien, so that the $1,608.43 became his. This is certainly a novel proposition, and a new method of paying old debts and wiping out old scores, and has nothing to commend it except

the *dicta* of certain elementary writers and judges, who never contemplated such an inequitable use of the rule they refer to. "The holding of collateral security for debt does not impair or suspend the right of action upon it. * * * 'If I pawn goods to A. for such a sum,' says Chief Justice HOLT, A. may have debt for the money, notwithstanding his having a pawn.' * * * In short, in a case of pledge, just as in a case of a mortgage, the creditor may use any remedy he has against the debtor or his property for the collection of the principal debt, without destroying or impairing his security for the debt until it is actually paid. The creditor is entitled to hold his securities, whatever they may be, until he gets his pay." Jones, Pledges, § 590; and see 3 Pars. Cont. (7th Ed.) 289; Benj. Sales, pt. 1, p. 14; 2 Kent, Comm. 582. In *Sickles* v. *Richardson*, 23 Hun, 566, Judge DAVIS said: "A party who holds property under a pledge, to secure a debt of the pledgeor, does not destroy the pledge or affect his rights under it by prosecuting his debt to judgment. The pledge still remains the security for the judgment debt, or so much of it as it was originally made to secure; nor does the pledge cease to be property by reason of a levy of an execution upon it, under the judgment. * * * It seems to us a *non sequitur*, both in law and logic, to hold that a party who holds such valid instruments, [bonds,] pledged as collateral, and who has rightfully put the indebtedness for which they are pledged into the form of a judgment, must, if he chooses to waive his lien and levy the property on execution, thereby cease to have any right in it whatever." What amounts to waiver of lien is often a question of intention, to be determined from the facts. To amount to a waiver of lien, the pledgee must either do some act so inconsistent with the continuance of the pledge as to evidence an intention to abandon his lien, or the act must be so incompatible with its continuance as to infringe some new equity or destroy its existence. The defendants never intended to waive their lien in favor of their debtors or their assignee, and have done nothing which equitably estops them from asserting its continuance. The plaintiff, as assignee, merely succeeded to the equity of his assignors in the property pledged, and has no higher rights therein. The demand made is destitute of merit, and finds no solid support in law or morals. Technicalities may be encouraged where they tend to promote justice, but should never be invoked to defeat it. There must be judgment for the defendants.